B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>IDRIS ABDUS SABER | DEFENDANTS<br>NAVY FEDERAL CREDIT UNION |
|---|---|

MAY 19 2025

TIMOTHY McGRATH, CLERK

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>Pro Se | ATTORNEYS (If Known)<br>SEAN M. CRAIG<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>3000 TWO LOGAN SQUARE<br>PHILADELPHIA, PA 19103 |
|---|---|

| PARTY (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Plaintiff seeks a declaratory judgment determining that Navy Federal Credit Union holds no valid or perfected lien on Plaintiff's vehicle, and that Plaintiff is the lawful holder in due course of the associated promissory note under 13 Pa.C.S. § 3302. Action arises under 11 U.S.C. § 506 and Fed. R. Bankr. P. 7001(2).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
     actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
     (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☒ 02-Other (e.g. other actions that would have been brought in state court
     if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

**Other Relief Sought**
Declaratory judgment; injunctive relief to prevent enforcement of lien; turnover of property under 11 U.S.C. § 542; removal of lien from title; attorney's fees; and any other relief deemed just and proper.

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>IDRIS ABDUS SABER | BANKRUPTCY CASE NO.<br>25-11841-amc | |
| DISTRICT IN WHICH CASE IS PENDING<br>EASTERN DISTRICT | DIVISION OFFICE<br>PHILADELPHIA DIVISION | NAME OF JUDGE<br>Chief Judge: Ashely M. Chan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| **IDRIS ABDUS SABER** | ) | **Case No. 25-11841-amc** |
| | ) | |
| | ) | |
| | ) | **Chapter 13** |
| Debtor. | | |

| | | |
|---|---|---|
| **Idris Abdus-Saber,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Adversary Proceeding No. ____** |
| **v.** | ) | |
| | ) | |
| **Navy Federal Credit Union,** | ) | **Trial Court Docket#: 230900635** |
| | ) | **Superior Case ID#: 2449 EDA 2024** |
| Defendants. | | |

## PROPOSED ORDER

AND NOW, this ____ day of _____, 2025, upon consideration of the Adversary

Complaint filed by Plaintiff Idris Abdus-Saber, and any responses thereto, and after notice and

hearing, it is hereby:

ORDERED that:

1. Judgment is entered in favor of Plaintiff and against Defendant Navy Federal Credit

   Union.

2.  The Court declares that Plaintiff is the Holder in Due Course of the Promissory Note
    referenced in the Complaint and holds paramount rights to enforce the instrument under
    13 Pa.C.S. § 3302.

3.  The Court further declares that Defendant does not have a perfected or enforceable
    security interest in the 2020 Jeep Grand Cherokee, VIN: 1C4RJFBG2LC167534.

4.  Defendant Navy Federal Credit Union shall take all necessary actions to release or
    remove any purported lien or claim of interest in the Vehicle from public records,
    including but not limited to the Pennsylvania Department of Transportation, within
    fourteen (14) days of entry of this Order.

5.  Defendant is enjoined from attempting to repossess, transfer, or otherwise interfere with
    Plaintiff's title, possession, or use of the subject Vehicle.

6.  Plaintiff is granted such other and further relief as the Court deems just and proper.

BY THE COURT:

HON. ASHELY M. CHAN
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 25-11841-amc |
| **IDRIS ABDUS SABER** | ) | |
| | ) | |
| | ) | **Chapter 13** |
| Debtor. | | |

MAY 1 9 2025

TIMOTHY McGRATH

| | | |
|---|---|---|
| Idris Abdus-Saber, | ) | |
| | ) | |
| **Plaintiff,** | ) | Adversary Proceeding No. ____ |
| | ) | |
| v. | ) | |
| | ) | |
| Navy Federal Credit Union, | ) | Trial Court Docket#: 230900635 |
| | ) | Superior Case ID#: 2449 EDA 2024 |
| **Defendants.** | | |

---

### ADVERSARY COMPLAINT
**FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, CONVERSION, BREACH OF CONTRACT, AND UNJUST ENRICHMENT**
Pursuant to 28 U.S.C. § 2201, 11 U.S.C. §§ 105(a), 506, 541, and 13 Pa.C.S. §§ 3301–3302

---

*Relating to Plaintiff's Holder in Due Course Status and Disputed Security Interest in a 2020 Jeep Grand Cherokee*

## PRELIMINARY STATEMENT

1. Plaintiff, Idris Abdus-Saber, brings this adversary proceeding under 28 U.S.C. § 2201, 11

   U.S.C. §§ 105(a), 362, 506, 541, 542, 544, 547, 548, 549, 550, and Rules 7001(2), (7),

   (9), and 7065 of the Federal Rules of Bankruptcy Procedure, and applicable Pennsylvania

law. Plaintiff seeks declaratory and injunctive relief regarding title and possession of a

2020 Jeep Grand Cherokee, and damages arising from Defendant, Navy Federal Credit

Union's ("NFCU"), assertion of an unlawful lien, breach of contract, conversion, and

unjust enrichment.

2. This case arises from NFCU's continued assertion of a purported security interest in

Plaintiff's Vehicle, despite the absence of a valid, executed security agreement and any

perfected lien under Pennsylvania's Motor Vehicle Code or Pennsylvania Uniform

Commercial Code (PUCC). Plaintiff, as a holder in due course of the underlying Note,

asserts paramount enforcement rights, and seeks to invalidate NFCU's unperfected and

unenforceable lien.

## I. JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (K).

4. Venue is proper in this district under 28 U.S.C. § 1409(a) because the underlying

bankruptcy case is pending in this district.

5. This adversary proceeding is properly brought under Federal Rule of Bankruptcy

Procedure 7001(2) (to determine the validity, priority, or extent of a lien or other interest

in property), Rule 7001(7) (for injunctive relief), and Rule 7001(9) (for declaratory

relief).

## II. PARTIES

7. Plaintiff Idris Abdus-Saber is the debtor in the above-captioned Chapter 13 case and
   resides in Philadelphia, Pennsylvania.

8. Defendant Navy Federal Credit Union is a federally chartered credit union doing business
   in Pennsylvania, with its principal place of business in Vienna, Virginia.

## III. FACTUAL BACKGROUND

9. On **April 26, 2023**, Plaintiff Idris Abdus-Saber received a **pre-approved loan offer** from
   Defendant Navy Federal Credit Union ("NFCU") for the purchase of a Vehicle. The offer
   was expressly **conditional**, subject to satisfaction of certain requirements, including
   execution of a Promissory Note, Security Agreement, and dealer endorsement. See
   Exhibit D, Correspondence from NFCU.  **See Exhibit D, Correspondence from Navy
   Federal.**

10. The pre-approval letter and accompanying terms provided that **no lien or loan
    consummation** would occur unless all conditions were satisfied, including the return of
    completed financing documents and dealership endorsement.

11. On the same date, **April 26, 2023**, Plaintiff received a **pre-approved negotiable
    instrument** (the "Loan Check") from NFCU. This Loan Check was made payable to
    **Plaintiff and the authorized Vehicle dealer**. **See Exhibit C, Plaintiff's Purchase
    Receipt.**

12. Plaintiff used the Loan Check to purchase a **2020 Jeep Grand Cherokee** from the dealer,
    properly endorsing and tendering the instrument in accordance with NFCU's instructions.

Plaintiff contemporaneously received a **purchase receipt** documenting the full payment and acquisition of the Vehicle. **See Exhibit C, Plaintiff's Purchase Receipt**.

13. Plaintiff took immediate and uninterrupted **possession of the Vehicle** and has maintained it continuously since April 2023.

14. The Loan Check was negotiated by the dealership and **cleared through the banking system** on **May 10, 2023**, meaning NFCU honored the payment.

15. NFCU's obligation to fund the loan was triggered upon negotiation of the Loan Check. Plaintiff did not, execute, or return a final **Promissory Note** or **Security Agreement.** No dealership submitted a lien authorization to PennDOT.

16. Plaintiff is in possession of the **original Promissory Note** dated **April 26, 2023, payable to the order of Navy Federal Credit Union**, and includes a **special endorsement** reading:

> "Without recourse, Pay to the Order of IDRIS ABDUS SABER,"
> followed by Plaintiff's signature.  **See Exhibit A, Copy of Promissory Note.**

17. This special endorsement qualifies as a **special indorsement** under 13 Pa.C.S. § 3205(a), making the instrument payable specifically to Plaintiff and rendering Plaintiff the **holder** under 13 Pa.C.S. § 1201(b)(21)(i).

18. Plaintiff remains in sole possession of the original Note, which constitutes a negotiable instrument under 13 Pa.C.S. § 3104 and is enforceable under 13 Pa.C.S. § 3301. Plaintiff is the payee, possessor, and transferee of the specially indorsed instrument.

19. Plaintiff took possession of the Note for value, in good faith, and without notice of any claim or defense, thereby acquiring the status of a **Holder in Due Course** pursuant to 13

Pa.C.S. § 3302. No assignment, negotiation, or transfer of the Note has occurred since its special indorsement to Plaintiff.

20. On August 12, 2024, a bench trial was held in the Philadelphia Court of Common Pleas involving competing claims to the Note and the Vehicle. During the trial, Plaintiff testified under oath that he retained exclusive possession of the Note and paid valuable consideration in connection with the underlying transaction. (See **Exhibit E – Trial Transcript Excerpt**, N.T. 8/12/24, pp. 6–7.)

21. Defendant NFCU failed to produce the original Note or any authenticated copy and did not offer admissible evidence of possession or a valid assignment. NFCU likewise failed to demonstrate the existence of any perfected security interest in the Vehicle.

22. Plaintiff introduced into evidence a **Lien and Title Information Report dated May 25, 2023**, issued by the Pennsylvania Department of Transportation ("PennDOT"), which confirmed that (a) Plaintiff is the registered titleholder of the Vehicle, and (b) no lien was recorded or listed as active. See **Exhibit B, DMV Title Record**.

23. The PennDOT Title Number associated with the Vehicle is 81323063. As of the filing of this Complaint, the Vehicle's Certificate of Title does not reflect any lienholder, including NFCU.

24. Despite unrebutted evidence of ownership and possession of the Note, the state court erroneously ruled that Plaintiff lacked standing to enforce the Note "unless and until [he] pays the loan back." (**Exhibit B**, N.T. at p. 8). This ruling misapplies Pennsylvania's Uniform Commercial Code and directly conflicts with Superior Court precedent recognizing the enforceability rights of Holders in Due Course.

25. In *D'Happart v. First Commonwealth Bank*, 291 A.3d 1026 (Pa. Super. 2023), the court held that a party in possession of a specially indorsed negotiable instrument is presumed to be a Holder in Due Course and entitled to enforce the instrument under Article 3 of the PUCC. The trial court's failure to apply this binding precedent constitutes clear legal error.

26. In sum, the evidence demonstrates that Plaintiff took the Note for value, in good faith, and without notice of any defense or claim, satisfying all criteria under 13 Pa.C.S. § 3302(a) to qualify as a Holder in Due Course. As such, Plaintiff holds paramount rights to enforce the instrument, and Defendant's alleged lien interest is both legally defective and unperfected under Pennsylvania law.

## IV. CLAIMS FOR RELIEF

### COUNT I - Declaratory Judgment That Plaintiff is Holder in Due Course and Has Superior Title To The Vehicle (13 Pa.C.S. §§ 3302, 3303, 3306, 3310, 3311)

(Against Defendant Navy Federal Credit Union)

24. Plaintiff incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

25. The Loan Check constituted a negotiable instrument under 13 Pa.C.S. § 3104, and Plaintiff became a holder in due course under 13 Pa.C.S. § 3302 upon proper endorsement and negotiation of the instrument.

26. Pursuant to 13 Pa.C.S. § 3302(a), Plaintiff qualifies as a holder in due course, having taken both instruments: a. For value, b. In good faith, c. Without notice of any claim or

defense by NFCU or third parties, and d. Without notice that it was overdue or had been
dishonored.

27. Plaintiff is therefore entitled to enforce the instruments free of personal defenses and
claims under §§ 3305 and 3306, and has superior rights to title and possession of the
Vehicle over NFCU or any purported lienholders.

28. NFCU has failed to produce competent evidence of forgery, fraud, or any real defense
under § 3305(b) capable of defeating Plaintiff's Holder in Due Course status.

29. In D'Happart v. First Commonwealth Bank, 291 A.3d 1026 (Pa. Super. 2023), the
Pennsylvania Superior Court reaffirmed that a facially valid endorsement and possession
of the instrument shift the burden to the opposing party to overcome the presumption of
enforcement rights under the UCC. NFCU has failed to meet this burden.

30. Under D'Happart, a holder in due course enjoys paramount rights against all parties
except those asserting real defenses under § 3305(b). NFCU has not raised any such
defenses.

31. NFCU's claim of a security interest in the Vehicle is unfounded because: a. No valid
security agreement was executed by Plaintiff at the time of the transaction; b. Plaintiff
never agreed to encumber the Vehicle with a lien; c. The Promissory Note NFCU later
references were not contemporaneous with the negotiation of the instrument and cannot
retroactively defeat Plaintiff's status as a holder in due course.

32. Under 13 Pa.C.S. § 3310, enforcement of any conflicting security interest is subject to the
rights of a holder in due course of the underlying instrument.

33. Accordingly, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and
applicable Pennsylvania law that: a. Plaintiff is the Holder in Due Course of the

preapproved loan instrument; b. Plaintiff is the Holder in Due Course of the negotiable

instrument under 13 Pa.C.S. § 3302; c. Plaintiff has superior title and possessory rights to

the Vehicle; d. Plaintiff is entitled to enforce the Note under 13 Pa.C.S. § 3301; e.

Defendant's personal defenses, unperfected security interest, or claims are not valid

against Plaintiff as a holder in due course; f. The Pennsylvania Department of

Transportation shall correct the Vehicle title to reflect Plaintiff as the sole legal owner.

## COUNT II - Declaratory Judgment – Lack of Perfection of Security Interest and Superior Title Rights

(Against Defendant Navy Federal Credit Union)

34. Plaintiff incorporates by reference all prior paragraphs of this Complaint as though fully
    set forth herein.

35. Plaintiff is the purchaser and current possessor of a 2020 Jeep Grand Cherokee, Vehicle
    Identification Number VIN 1C4RJFAGXLC177791, which was acquired through a
    transaction documented by a Promissory Note. See Exhibit A, Copy of Promissory Note
    Dated May 19, 2023.

36. As established in Count I, Plaintiff is a holder in due course of the Note and is entitled to
    enforce it free from personal defenses or claims.

37. The Defendant, Navy Federal Credit Union ("NFCU"), asserts a security interest in the
    Vehicle as collateral for an alleged auto loan.

38. Under Pennsylvania law, particularly 13 Pa.C.S. § 9311(b) and 75 Pa.C.S. § 1132.1,
    perfection of a security interest in a motor Vehicle must be made by notation on the
    certificate of title issued by the Pennsylvania Department of Transportation (PennDOT).

39. Defendant failed to record any lien on the certificate of title, and PennDOT records
    confirm that as of the date Plaintiff acquired title, no lien in favor of Defendant existed.
    See Exhibit B, DMV Title Record for 2020 Jeep Grand Cherokee.

40. Therefore, even if a security agreement were presumed to exist, it is not perfected and is
    unenforceable against Plaintiff, the estate, or any third parties under the UCC and
    Pennsylvania's Motor Vehicle Code.

41. Under 11 U.S.C. § 544(a), the Chapter 13 Trustee or Debtor-in-Possession (here,
    Plaintiff) holds the rights of a hypothetical judicial lien creditor, which takes priority over
    unperfected liens.

42. Moreover, 11 U.S.C. § 547(b) authorizes avoidance of unperfected interests that impair
    the estate. As such, Defendant's security interest is voidable.

43. The promissory Note at issue does not contain any language granting a security interest in
    the 2020 Jeep Grand Cherokee, nor did Plaintiff execute any security agreement
    satisfying the requirements of 13 Pa.C.S. § 9203(b).

44. Under 13 Pa.C.S. § 9313(a), a security interest in goods is enforceable only if a security
    agreement is authenticated and describes the collateral. NFCU has not produced such an
    agreement signed by Plaintiff.

45. Accordingly, Plaintiff seeks a declaratory judgment that: a. Defendant's claimed security
    interest is unperfected and unenforceable against Plaintiff and the bankruptcy estate; b.
    Plaintiff holds superior title and ownership interest in the Vehicle; c. Defendant has no
    enforceable lien or right to repossession under federal or state law; d. Any asserted lien is
    voidable under 11 U.S.C. § 544(a); e. Defendant's claim is unsecured under 11 U.S.C. §
    506(a).

**COUNT III - Conversion, Wrongful Lien Assertion, and Injunctive Relief**

(Against Defendant Navy Federal Credit Union)

46. Plaintiff incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

47. Defendant, Navy Federal Credit Union ("NFCU"), asserts an unperfected security interest in Plaintiff's 2020 Jeep Grand Cherokee, Vehicle Identification Number 1C4RJFAGXLC177791, as collateral for an alleged auto loan.

48. Despite being aware or should have been aware that the security interest was unperfected, Defendant wrongfully asserted a lien on the Vehicle and attempted to enforce a security interest against Plaintiff.

49. Plaintiff has a superior, unencumbered ownership interest in the Vehicle, as evidenced by the certificate of title and Plaintiff's status as a holder in due course of the Promissory Note, as outlined in Count I.

50. Defendant's actions in asserting a claim to the Vehicle that it has no legal right to possess, due to the lack of perfection of the security interest, constitute an unlawful conversion of Plaintiff's property.

51. As a result of Defendant's wrongful lien assertion and threat of repossession, Plaintiff has suffered and will continue to suffer irreparable harm, including but not limited to loss of use of the Vehicle, financial loss, and emotional distress.

52. Plaintiff has no adequate remedy at law to prevent Defendant from continuing its wrongful actions, and therefore, an injunction is necessary to prevent further harm.

53. Plaintiff seeks the following relief: a. A declaratory judgment confirming that Plaintiff
holds clear title to the Vehicle and that Defendant's claim of a security interest is invalid;
b. A permanent injunction enjoining Defendant from repossessing, asserting a lien, or
otherwise interfering with Plaintiff's use and possession of the Vehicle; c. An award of
compensatory damages for the conversion of the Vehicle and any associated financial
losses; d. An award of punitive damages for Defendant's willful and unlawful conduct; e.
Any other relief deemed just and proper by the Court.

## COUNT IV – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

(Against Defendant Navy Federal Credit Union)

54. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

55. Every contract under Pennsylvania law imposes an implied covenant of good faith and
fair dealing in its performance and enforcement.

56. The implied duty of good faith includes obligations to act honestly in fact, to honor the
reasonable expectations of the other party, and not to take unfair advantage of the other
party in a manner that defeats the purpose of the agreement.

57. Plaintiff reasonably expected that Defendant would not assert or record a lien on the
subject Vehicle unless it had a properly perfected security interest in accordance with
applicable Pennsylvania and UCC law.

58. Despite knowing that no lien was recorded on the certificate of title and that Plaintiff had
acquired and retained physical possession of both the Vehicle and the original Note
bearing an indorsement in Plaintiff's favor, Defendant wrongfully and intentionally

asserted an adverse lien interest in the Vehicle and continues to do so in bankruptcy

filings and in public records.

59. Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing by

attempting to enforce a lien interest it knew or should have known was unperfected and

unenforceable against a holder in due course.

60. As a direct and proximate result of Defendant's breach, Plaintiff has suffered harm

including clouded title, impairment of property rights, legal expenses, and risk of

wrongful repossession.

61. Defendant's continued assertion of a defective lien interest demonstrates willful

misconduct, bad faith, and disregard for the rights of Plaintiff and for applicable law.

## COUNT V - Violation of the Uniform Commercial Code – Wrongful Assertion of Security Interest and Unjust Enrichment

(13 Pa.C.S. §§ 1201, 9203, 9301, 9302, 9303, 9308, 9317; 13 Pa.C.S. §§ 3104, 3109, 3301,

3302)

62. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

63. The preapproved loan check issued by NFCU, used to fund the purchase of the 2020 Jeep

Grand Cherokee was a negotiable instrument within the meaning of 13 Pa.C.S. § 3104.

64. Plaintiff endorsed the check and tendered it in good faith to the Vehicle dealer in

exchange for a 2020 Jeep Grand Cherokee (the "Vehicle"), and NFCU processed and

honored the instrument without objection.

65. NFCU did not obtain a contemporaneous, authenticated security agreement signed by Plaintiff at the time of the transaction. No written consent to encumber the Vehicle was given.

66. Any claim of a security interest in the Vehicle was unilaterally imposed after the transaction, and not supported by mutual assent, delivery, or valid execution under 13 Pa.C.S. § 9203.

67. Under 13 Pa.C.S. § 9317(b), even if NFCU claims an automatically perfected purchase-money security interest (PMSI), such interest is subordinate to the rights of a buyer in the ordinary course of business, which Plaintiff is presumed to be under the UCC due to the nature of the transaction with the dealer.

68. Additionally, any interest claimed by NFCU must have been perfected in accordance with 13 Pa.C.S. § 9303(a), including public record filing or notation of lien on the certificate of title contemporaneous with issuance.

69. The Vehicle title did not accurately reflect NFCU's lien status at the time of delivery and negotiation. If any lien was later placed or recorded, it was done without legal basis and over Plaintiff's objections. See Exhibit B, DMV Title Record for 2020 Jeep Grand Cherokee.

70. Plaintiff is the named payee on the Note and the Holder in Due Course under 13 Pa.C.S. § 3302(a)(1), having taken the instrument for value, in good faith, and without notice of any defect or claim of a security interest.

71. Defendant Navy Federal Credit Union failed to perfect any security interest in the Vehicle by not complying with 13 Pa.C.S. §§ 9203 and 9302(a)(5), which require a valid security agreement and proper lien notation under state motor Vehicle title law.

72. As a result of NFCU's actions, Plaintiff has been deprived of full legal title and possession of the Vehicle, despite having tendered value, received delivery, and negotiated the underlying loan instrument as payee and Holder in Due Course.

73. NFCU has thereby been unjustly enriched by asserting and maintaining an invalid lien and withholding clear title from Plaintiff, despite receiving payment and honoring the negotiable instrument.

74. Equity and good conscience require that NFCU disgorge any benefit it has retained from this transaction, and that the Vehicle's certificate of title be cleared of any improper lien.

## COUNT VI - Fraud and Misrepresentation

(Common Law and 18 Pa.C.S. § 4107 – Deceptive or Fraudulent Business Practices)

75. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

76. At the time the Note was executed, Navy Federal Credit Union represented—explicitly or implicitly—that the loan funds were being issued in connection with a valid security interest in the Vehicle.

77. Defendant knew or should have known that no enforceable or perfected security interest existed, as it failed to file any security agreement, failed to Note a lien on the certificate of title, and processed the loan as a personal/unsecured loan.

78. Despite this, Defendant fraudulently claimed and continues to claim a secured lien over the 2020 Jeep Grand Cherokee in multiple forums, including in court filings, debt collection communications, and responses to Plaintiff's legal challenges.

79. Defendant's representations were material, knowingly false, and made with the intent to deceive Plaintiff and third parties (including courts and public authorities), to gain an improper advantage in asserting ownership or title rights to the Vehicle.

80. Plaintiff relied upon Defendant's representations to his detriment, including by entering into litigation, incurring costs, and being denied full title and use of the Vehicle to which he is lawfully entitled.

81. Defendant's conduct amounts to fraud in the inducement, fraud in the execution, and/or fraudulent business practices under Pennsylvania law, including 18 Pa.C.S. § 4107.

82. As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff suffered harm, including but not limited to impaired title, economic loss, reputational damage, and deprivation of lawful property rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant Navy Federal Credit Union, and grant the following relief:

1. Declaratory Judgment pursuant to 28 U.S.C. §§ 2201–2202 and 11 U.S.C. §§ 506(a), 544(a), declaring that: a. Plaintiff is the Holder in Due Course of the Note at issue under 13 Pa.C.S. § 3302; b. Navy Federal Credit Union does not possess a valid, enforceable, or perfected security interest in the 2020 Jeep Grand Cherokee; c. Any lien claim by Defendant is void or avoidable under 11 U.S.C. § 544(a) and/or unenforceable under Pennsylvania's UCC; d. The 2020 Jeep Grand Cherokee constitutes unencumbered property of the bankruptcy estate under 11 U.S.C. § 541.

2.  Injunctive Relief, restraining Defendant from asserting or enforcing any security interest or lien against the Vehicle titled in Plaintiff's name.

3.  Order compelling amendment of any Proof of Claim filed by Navy Federal Credit Union in this bankruptcy to reflect unsecured status pursuant to 11 U.S.C. § 506(a).

4.  Order directing the Pennsylvania Department of Transportation to remove any lien notation from the certificate of title to the 2020 Jeep Grand Cherokee, if one exists, as unauthorized or invalid.

5.  Attorney's fees and costs, as may be permitted under applicable law, including 42 Pa.C.S. § 2503(7) for obdurate, vexatious, or bad faith conduct.

6.  Such other and further relief as this Court deems just and proper in law or equity.

Respectfully submitted,

Dated: May 19, 2025
/s/ Idris Abdus-Saber
Idris Abdus-Saber, Pro Se
45 East City Avenue, Suite 525
Bala Cynwyd, PA 19004

## CERTIFICATE OF SERVICE

I hereby certify that on this May 19, 2025, a true and correct copy of the foregoing Adversary

Complaint was served upon the Defendant, Navy Federal Credit Union, by via First-Class Mail

and the Court's E-filing CM/ECF system.

Date May 19, 2025

Sean M. Craig, Esq.
PA 331672
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
18th and Arch Street
Philadelphia, PA 19103
(215) 981-4242
Counsel for <u>NAVY FEDERAL CREDIT UNION</u>

*/S/ Idris Abdus Saber*
IDRIS ABDUS SABER

**VERIFICATION**

I, Idris Abdus-Saber, verify that the statements made in this Adversary Complaint are true and

correct to the best of my knowledge, information, and belief. I understand that false statements

are subject to penalties of perjury.


Date: May 19, 2025

Signature: */S/ Idris Abdus Saber*
Idris Abdus-Saber

# EXHIBIT A
# COPY OF PROMISSORY NOTE
# DATED MAY 19, 2023

Case 25-00150-amc    Doc 1-1    Filed 05/19/25    Entered 05/19/25 10:11:21    Desc
Correct Adv. showing File Date Stamp    Page 24 of 41

(Page 3   of   3)

## Promissory Note, Security Agreement, and Disclosure


NAVY FEDERAL Credit Union

This document includes a Promissory Note, a Security Agreement, and a Truth-In-Lending Disclosure. Please read everything carefully. There are additional terms and conditions on the reverse side. You are bound by these terms and conditions as well as those on this side. Navy Federal Credit Union is identified in this document as "Navy Federal" and the Borrower (Member)/Co-Borrower and any GUARANTOR will be identified as "Borrower." Do not alter this document. Notify us if a change is necessary. Verify all completed spaces. Complete signatures where indicated with a ▶ below.

Borrower's Name and Address

**PALN** 20231161018340
Date 05/19/23
Loan No. 430015842079-04

IDRIS ABDUS SABER
45 EAST CITY AVENUE
SUITE 525
BALA CYNWYD PA 19004

| Purpose of Loan **USED VEHICLE** | Check/Draft-Office Use Only 0219333037 |
|---|---|

| Old Loan Balance(s) (if any) | Interest and Other Fees on To Loan (Balances) | Cash to Borrower | Amount Financed |
|---|---|---|---|
| $ 11,468.72 **+** | $ 53.64 **+** | $ 30,853.40 **=** | 42,375.76 |

### Truth-In-Lending Disclosure

| **Annual Percentage Rate** 10.340 % The cost of your credit as a yearly rate. | **Finance Charge** $ 14,703.65 The dollar amount the credit will cost you. |
|---|---|
| **Amount Financed** $ 42,375.76 The amount of credit provided to you on your behalf. | **Total of Payments** $ 57,079.41 The amount you will have paid after you have made all payments as scheduled. |

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 71 | $ 792.78 Monthly, Beginning | 06/20/23 |
| 1 | $ 792.03 Final Payment | 05/20/29 |

**Security:** You are pledging a security interest in the collateral described below:

| Make and Year | Collateral Description | Serial Number |
|---|---|---|
| 2020 JEEP | GRAND CHEROKEE | 1C4RJFAGXLC177791 |

Other: Shares and dividends in accordance with Section 107(11) of the Federal Credit Union Act.

**Prepayment:** If you pay off early, you will not have to pay a penalty. You must pay all accrued unpaid interest and other charges and fees due before a payment is applied to the loan's principal balance.
**Payment Application:** Payments are applied first to accrued interest, then to principal.
**Late Payments** You will be charged a $ 29 late fee for every month in which any amount due is not received by the payment due date. An assessed late fee is added to the principal balance of the loan if the loan's past due amount, regular monthly payment, and late fee is not paid by the statement due date. Once added to the principal, interest will accrue on the fee.
See the Promissory Note and Security Agreement on the reverse side for information concerning prepayment and default.

NFB 8023 05 (6-18) 04 15 070036

Borrower Selecting Coverage
                                                                                    Initials

Guaranteed Asset Protection Fee - New Vehicle $ 599.00 ___  ☐ Protection Selected   ___ Protection Declined   ___ Not Eligible

Guaranteed Asset Protection Fee - Used Vehicle $ 599.00  ☒ Protection Selected   ___ Protection Declined   ___ Not Eligible

The total amount of fees you will pay if voluntary Guaranteed Asset Protection was selected.
When the GAP fee is added to the amount financed, it will accrue interest, which increases the cost.
I/We understand that I/we can cancel Guaranteed Asset Protection within 60 days by contacting Navy Federal Credit Union.

Returned Loan Payment Fee: You will be charged a $29.00 fee to your savings account if your payment is returned unpaid.
I/We certify that all information provided by me/us is true and complete (Section 1014, Title 18, U.S. Code makes it a federal crime to knowingly make a false statement or report on the application for the purpose of influencing a Federal Credit Union).

Borrower (Member) ▶ _Idris Abdus Saber_
                        IDRIS ABDUS SABER
If Guarantor: I confirm as Guarantor that I have read and fully understand the provisions of the attached Notice to Co-signer (Guarantor). Where I will not share in the loan proceeds, I acknowledge that I am obligated to repay the loan.

Co-Borrower (Member) or Guarantor (Non-member) ▶

By signing this note as Owner of Collateral (Other than Borrower), I agree that my ownership interest in the collateral is subject to the Security Agreement only. I am not bound to pay the loan.

Owner of Collateral (Other than Borrower) ▶ _Idris Abdus Saber_

Notice: See other side for additional disclosures and Security Agreement.

WITHOUT RECOURSE
PAY TO THE ORDER OF

© 2021 Navy Federal NFCU 33L (12-21)          IDRIS ABDUS SABER

BY _Idris Abdus Saber_
    Idris Abdus Saber



# EXHIBIT B
# DMV Title Record for 2020 Jeep Grand Cherokee



# Lien and Title Information Report
### 2651-Navy Federal Credit Union

| | | | |
|---|---|---|---|
| Account No. | 43001684207904-0000001 | | |
| Loan No. | | VIN | 1C4RJFAGXLC177791 |
| Loan Suffix | | Branch | |
| Customer | IDRIS ABDUS SABER | | |
| Organization ID | 2651 | | |
| Lien Start | 05/19/2023 | Organization Name | Navy Federal Credit Union |
| Original Loan Amount | $42,376.00 | Lien End | 05/20/2029 |
| Lien Type | Retail | Lien Balance Amount | $0.00 |
| | | Dealer ID | DOMESTIC |

| | | | |
|---|---|---|---|
| Access Number | 00000014677361 | | |
| Product Code | USE | Collateral Code | COL |

### Last ELT Transactions

Received On
2023-05-25 02:14:11.0

Add Record - Perfection of Lien

### Borrower / Lesee Details

| | |
|---|---|
| Name | IDRIS ABDUS SABER |
| Address | 46 EAST CITY AVENUE,SUITE 525,BALA CYNWYD PA,19004-0000 |

### Vehicle Information

| | | | |
|---|---|---|---|
| Vehicle Type | Auto | | |
| Model | GRAND CHER | Make | JEEP |
| Mileage | 0 | Year | 2020 |

### Title Information

| | | | |
|---|---|---|---|
| Title Number | 81323063 | | |
| Tag Number | | Title State | PA |
| Status | MATCHED | VIN | 1C4RJFAGXLC177791 |
| Lien Expiration Date | 05/24/2029 | Match Date | 05/25/2023 |
| | | Media Type | Electronic |

### State Information

| | | | |
|---|---|---|---|
| Name | ABDUS-SABER,IDRIS | Lessee | |
| Address | 46 E CITY AVE,BALA CYNWYD PA,19004 | | |
| Vehicle Type | | | |
| Model | | Make | JEEP |
| Mileage | 47077 | Year | 2020 |
| Title State | PA | | |
| Brands | 68 PA: ACTUAL MILEAGE | Title Number | 81323063 |

# EXHIBIT C

# Plaintiff's Purchase

# Receipt for the Vehicle

**Front of Draft**



**Back of Draft**

# EXHIBIT D

# Correspondence from Navy Federal



**NAVY FEDERAL Credit Union**

P.O. Box 3000
Merrifield, VA 22119-3000

Date **04/26/23**

Loan No. **430015842079-04**

**20231161018340**

IDRIS ABDUS SABER
45 EAST CITY AVENUE
SUITE 525
BALA CYNWYD           PA 19004

Dear Member:

Congratulations! Your **LATE MODEL USED VEH** loan has been preapproved for an amount financed not to exceed $ **42,399.00** (subject to the terms and conditions below). Preapproved loan item No. **0219333037** is attached.

When the preapproved loan item is properly made out and endorsed by you (and your co-borrower/guarantor, if any) and the payee (authorized vehicle dealer) from whom you buy your vehicle. Navy Federal Credit Union ("Navy Federal") will honor the item for any amount up to that shown above if negotiated by **07/25/23** so long as Navy Federal has not revoked this preapproval. (To maximize your negotiating leverage, do not divulge the upper limit of your preapproved credit to the authorized vehicle dealer). Navy Federal may revoke this approval and choose not to honor the attached item at any time in Navy Federal's sole discretion without notice to you prior to dishonoring the attached item.

You can use your preapproved loan item like a check when you have decided on the vehicle you wish to buy and have negotiated the best price with the dealer. **The item may only be payable to a dealership, and the item will NOT be paid unless ALL the necessary information and endorsements on the front AND reverse of the item have been completed** and Navy Federal has not revoked this preapproval. This includes the "Promissory Note instrument" on the reverse of the item. It will be replaced by the Promissory Note, Security Agreement, and Disclosure (Promissory Note) that will be provided to you for completion as soon as we receive the negotiated item through the banking system. Signing the Promissory Note consummates the credit agreement and replaces the Promissory Note Instrument.

The loan has been preapproved based on the following estimates in _____**72**_____ monthly installments at _____**9.040**%_____ Annual Percentage Rate (APR), the rate currently in effect for the loan terms you have requested, with payments to be made by **DIRECT REMITTANCE**, starting approximately 30 days after the preapproved loan item is paid by Navy Federal. These estimates, including the APR, are based on the terms you requested, and could change if your loan terms change or if you choose a vehicle in a class (new/used/late model used) that differs from your application (see page 3 for additional information).

Interest begins to accrue on your permanent loan as of the date the item is paid by Navy Federal. If the interest rate remains the same as shown above, and if payments are made at exactly 30-day intervals, your estimated monthly payment will be at the rate of $ _____**1.81577**_____ per $100 borrowed. If you selected Guaranteed Asset Protection at the time of application, the flat enrollment fee of $399 for a new or used car will be added to the item when received by Navy Federal, thereby increasing your loan amount by the enrollment fee and impacting the corresponding monthly payment.

[X]   The preapproved credit amount stated above is in addition to the outstanding balance on your existing loan(s), which currently is $ _____**11,468.72**_____. The balance of that loan as of the date the preapproved item is paid by Navy Federal will be combined with your new loan(s) at the appropriate APR when conversion to permanent financing is accomplished.

[ ]   You have designated _____ as your co-borrower/guarantor. Be sure he/she has read the *Notice to Co-Signer (Guarantor) (NFCU 768)* before signing the "Promissory Note instrument" on the back of the item.

If you have elected Guaranteed Asset Protection (GAP), please refer to the enclosed Guaranteed Asset Protection Agreement and Disclosure for details. GAP is voluntary and not required in order to obtain credit. We will not consider whether or not you elect the program in making our credit decision. If you elected GAP during your application, it will be reflected on your Promissory Note. You may cancel by contacting Navy Federal Credit Union toll-free in the U.S. at 1-888-842-6328. For toll-free numbers when overseas, visit navyfederal.org. Use 1-703-255-8837 for collect international calls. If you cancel within 60 days of enrolling in the program, we will credit the outstanding balance for any fees charged for the program. You should carefully read the Guaranteed Asset Protection Agreement and Disclosure for a full explanation of terms and conditions of the program; there are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits.

Also enclosed is a *Preapproved Vehicle Loan Instructions* form *(NFCU 478)* that you and the dealer must follow to cash your preapproved loan item. **Be sure to follow these instructions carefully and completely to ensure payment of the item.** *(See enclosed "Additional Instructions for Vehicle Loans" for additional information.)*

Again, congratulations on your forthcoming purchase of a vehicle. Should you have any questions about your preapproved loan, please call us by contacting Navy Federal Credit Union toll-free in the U.S. at 1-888-842-6328. For toll-free numbers when overseas, visit navyfederal.org. Use 1-703-255-8837 for collect international calls.

Sincerely,

**Navy Federal Credit Union**

Enclosures:

Case ID: 23090063
Control No.: 2309725

Pay - "The Borrower(s) jointly and severally, waiving rights of demand and notice, hereby promise(s) to pay to the order of Navy
amount shown in the Truth-In-Lending Disclosure in the section of the Promissory Note, Security Agreement, and Disclosure
"Promissory Note & Agreement") that will be issued upon the negotiation of the enclosed item, with interest on the unpaid balance at the
centage Rate (APR) as shown in the payment schedule. Interest is charged on a daily basis from the date of the Promissory Note,
not reflect the effect of deposits required to secure this loan.

rest - Navy Federal calculates interest on your loan using the simple interest method. Interest is calculated daily on the unpaid principal
e formula used is: principal balance X interest factor (the APR divided by 365 or 366 for leap year). This provides the amount of interest
s on a daily basis. The daily accrual, or per diem, is then multiplied by the number of days between receipt of payments.

Credit Report - I authorize and understand Navy Federal may obtain a consumer credit report to consider me for other products and
h Navy Federal.

l Acknowledgment - Borrower acknowledges receipt of a completed copy of this Instrument and Disclosure statement prior to
tion of this loan. This agreement is entered into and shall be governed, in all respects, by federal law and, when necessary, the laws of
Virginia.

lien - I/We acknowledge and pledge to Navy Federal a statutory lien in my/our shares and dividends on deposit in all joint and individual
nd any monies held by Navy Federal now and in the future, to the extent of the loan made and any charges payable. The statutory lien
pply to shares in any Individual Retirement Account.

wledge and pledge to Navy Federal a security interest in the collateral securing loan(s) that I/we have with Navy Federal now and in the
uding any type of change or increase, and any proceeds from the sale of such collateral and of insurance thereon, not to exceed the
ince of the loan. This security interest in collateral securing other loans does not apply to any loan(s) on my/our primary residence.

Claim (NOC) - Neither Borrower nor Navy Federal may commence, join, or be joined to any judicial action (as either an individual litigant or the
a class) that arises from the other party's actions pursuant to this Agreement or that alleges that the other party has breached any provision
luty owed by reason of, this Agreement, until such party has notified the other party of such alleged breach and afforded the other party a
period after the giving of such notice to take corrective action.

ount - If this loan is made to a trust with a Navy Federal Trust Account number, each person signing the note is jointly and severally liable
n. When the trust is revocable, all trustee(s) and natural person borrower(s) must sign the note and will be jointly and severally liable for the loan.

ieral Agreement

ral pays the total cash amount of the loan to the Borrower or to the Borrower's account in another institution designated by the Borrower,
o financial ties with, or right of recourse against, the seller of the property from which a Borrower purchases and finances with Navy Federal.

ed Asset Protection is voluntary and is not required in order to obtain credit. Refer to the Guaranteed Asset Protection Agreement and
for a full explanation of the terms and conditions of the program. Guaranteed Asset Protection is only available for new and used vehicles.

Agreement

(s) of the collateral warrant(s) that he/she is the owner of the collateral listed on the front of the Promissory Note and Agreement; that
o other liens or claims against the collateral; that the collateral is not a commercial/business purpose vehicle and will not be used for
services; and that as the owner(s), he/she has the right to make this agreement. If the collateral described on the front of the Promissory
Agreement is to be purchased with the proceeds of this loan, Borrower warrants the proceeds will not be used for any other purpose.

r(s) will appoint Navy Federal as owner(s)' attorney-in-fact with limited authority to take such steps and accomplish such acts as Navy
ay deem necessary to perfect and continue the perfection of the security interest created by this Security Agreement and to protect the
The owner(s) will defend the collateral against claims and demands of other persons and will not permit any other liens to the attached
The owner(s) will also keep the collateral in good condition and will not knowingly permit any action to impair its present value. The
will obtain written consent of Navy Federal prior to disposing of collateral. The owner(s) will: (1) maintain property insurance (from an
owner(s)' choice) on the collateral covered by this Security Agreement against loss and damage with a collision deductible of no more
o; (2) assign to Navy Federal the right to receive the proceeds of insurance, not to exceed the unpaid principal loan balance, interest,
and fees owed should the collateral be lost or damaged; and (3) provide satisfactory proof that the required coverage remains in effect.
comply with this may result in converting this loan's annual percentage rate to Navy Federal's prevailing rate for signature loans. We
"force place" insurance at the Borrower's expense in the event that the Borrower/owner(s) fail(s) to comply with the insurance requirement.
placed insurance will cover the loan's principal balance only and will not cover any personal belongings. As promptly as possible and no
three months, the Borrower/owner(s) will deliver to Navy Federal a Certificate of Title or other proof of ownership reflecting Navy Federal
lien holder. The Certificate of Title must also show the individual Borrower/owner(s) as the registered owner(s) of the collateral. Failure
with this request can result in Navy Federal converting this loan's annual percentage rate to Navy Federal's prevailing unsecured personal
and can increase your monthly payment. **If Navy Federal exercises its right to file for the lien-recorded title, filing fees will appear
t on the Borrower's savings account.**

Agreement

rrence of any of the following shall constitute default: failure to make payments as specified; violation of any Borrower warranty given
any other agreement that applies to this loan; failure to perform in accordance with this or any other agreement that applies to this loan;
that any warranty or statement of Borrower made in connection with this transaction is incorrect in any material respect; use of the collateral
nner prohibited by law; limitation on the collateral being attached, levied upon, seized in any proceeding, or held by virtue of any lien;
or order; failure to adequately insure and properly register the collateral; suspension or revocation or registration certificate or Borrower's
license; death, insolvency, business failure, or entry of a discharge in bankruptcy or receivership by or against the Borrower, Co-Borrower/
r, or Owner of Collateral (other than Borrower) of any property of either. Navy Federal or its agent has the right to take possession
lateral without prior notice to the Borrower upon default.

ult by Borrower under any of the terms or provisions of any other agreement between Borrower and Navy Federal, whether existing now
uture, shall constitute a default under all agreements. Under default, the balance due under this Note, plus any interest, charges, and fees,
ome immediately payable without further notice to the Borrower at the option of Navy Federal. If the amount due is not paid immediately,
leral shall have the right to take such action as is available to it under the law. If you default, such action may include taking possession of
collateral, taking (repossessing) the vehicle from you if we do so peacefully and the law allows it, and selling, or otherwise disposing of the
any part thereof, at public or private sale upon such terms as Navy Federal may elect, and apply the proceeds received from such a sale
ounts owed. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are
icle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
will be liable to Navy Federal for any deficiency to the extent permitted by law. In the event of default, all reasonable costs of collection,
but not limited to, court costs, expenses, and reasonable attorney's fees, will be paid by the Borrower. Navy Federal may also revoke
all membership privileges previously extended to the Borrower (except the right to vote and to maintain a savings account) without prior
the Borrower.

er by Navy Federal of any default by the Borrower shall not be a waiver of any subsequent default.

er is in default, Navy Federal may obtain any information it deems necessary to cure or collect said default, including Borrower's current
nformation, as permitted by law. Contact to a Borrower's employer will be limited to obtaining current contact information.

gation of the Borrower to Navy Federal to repay that portion of this loan not covered by voluntary Guaranteed Asset Protection shall
on to the Co-Borrower/Guarantor's and the Borrower's heirs or estate.

se that if you do not make payments on your account in accordance with this or any other agreement that applies to this loan, you will
alls from Navy Federal regarding your account at any telephone number provided by you (including cellular telephones). In addition, we
prerecorded voice messages or automatic dialing devices to contact you at any telephone number associated with your account. You
ch calls will not be "unsolicited" calls for the purpose of state and federal laws.

Case ID: 23090063
Control No.: 2309725

If Borrower and Navy Federal enter into a loan workout agreement, Navy Federal may, at its option, add all accrued an unpaid interest to the balance of the loan as part of the agreement. Interest would then accrue on the new principal balance.

**Military Annual Percentage Rate**

The following statement applies to covered borrowers (Active Duty servicemembers and their dependents) under the Military Lending Act: Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). If you would like to hear this statement or the payment obligations orally, please call 1-800-667-9596.

**Additional Instructions for Vehicle Loans**

Your permanent financing (installment loan) contract will include the following requirements:

- *U.S. Registration* — If the vehicle is registered in a title state, forward the Certificate of Title to Navy Federal Credit Union. The title must reflect a first lien in favor of Navy Federal. If registered in a non-title state, forward a notarized Bill of Sale.
- *Overseas Registration* — For U.S.- made vehicles, forward the Manufacturer's Statement of Origin to Navy Federal Credit Union. For foreign-made vehicles, forward the Bill of Sale, a copy of the Military Registration, or the Foreign Registration.
- *Instruct your insurance company to list Navy Federal Credit Union as loss payee on your collision and comprehensive policy.* The acceptable insurance deductible is $1,000 or less.

After you have selected a qualified vehicle and have agreed with your dealer on the price, trade-in, rebate, and many other details of your purchase, you are ready to complete payment for the vehicle with your Navy Federal preapproved loan item.

**Please remember — your annual percentage rate and loan terms could change if:**

- there is not sufficent value in the vehicle you purchased to support the amount financed. The vehicle must have a value of at least 100% of the amount financed. The value is determined using the NADA Retail Value. To cover the additional costs of the taxes, title charges, and tags, your loan may reach a maximum of 125% of the vehicle's NADA Retail Value. Navy Federal reserves the right to reject any item in which the vehicle specified does not support the amount financed;
- the vehicle is more than seven years old (Auto Loans only);
- the vehicle does not fall under the category for which the loan was approved (e.g., used auto instead of new auto, auto instead of motorcycle);

| Purpose | Year | Mileage |
|---|---|---|
| New Auto | Current or previous model year | Less than 7,500 miles |
| Late Model Used Auto | Current or previous model year | 7,500-30,000 miles |
| Used Auto | Less than 20 years old | Over 30,000 miles |

- the amount actually financed does not qualify for the term you requested; or
- you title the collateral in a name or entity other than your individual name.

**A preapproved item cannot be used to purchase the following: commercial/business purpose vehicles (including vehicles used for hire or taxi services), recreational vehicles, airplanes, ATV/mopeds, jet skis, snowmobiles, or classic/antique cars.** We offer other loans for these types of vehicles. Please call us to apply at 1-888-842-6328. It also cannot be used to purchase multiple automobiles. However, it cannot be used to purchase a boat, trailer, hull, or engine. Ask to see the copy of the title to avoid purchasing a vehicle that has been branded as salvaged, lemon, refurbished, or rebuilt.

Follow these easy steps carefully **after** you finalize the deal with your authorized dealer.

- Using a pen, complete your preapproved loan item.
  - *On the "Pay To The Order Of" line, fill in the name of your authorized dealer.*
  - *Complete the lines "Amount in Numbers" and "Amount In Words."*
    - If you have elected to enroll in Guaranteed Asset Protection, do not include that fee in the amount lines.
  - Fill in **all** of the vehicle description information blocks (year, make, model, mileage, and VIN).
  - In the lower right corner, sign your name, as printed on the item, and write the date.
  - On the reverse of the item, read the "Promissory Note Instrument" AND sign underneath as the "Borrower (Member)."
  - **If you have a co-borrower/guarantor, be sure he/she signs the "Promissory Note Instrument" on the "Co-Borrower's/Guarantor's Signature" line.**
- Give the completed item and *Preapproved Vehicle Loan Instructions (NFCU 478)* included in this preapproved loan package to your authorized dealer.

**Thank you for choosing Navy Federal!**

# Guaranteed Asset Protection Plan Agreement and Disclosure

Please read this document carefully. There are terms and conditions on both sides of this document. Navy Federal Credit Union is identified in this document as "Navy Federal," "We," "Our," or "Us," and the Member will be identified as "Borrower," "You," or "Your." Do not alter this document.

**Guaranteed Asset Protection (the "Program" or "GAP") is voluntary and not required to obtain credit. We will not consider whether or not You elect GAP in making a credit decision.** This agreement explains the terms for the Program. This agreement contains the conditions upon which We may cancel all or a portion of the Unpaid Net Balance and/or We may cancel interest.

There are eligibility requirements, conditions and exclusions described herein that could prevent You from receiving benefits under the plan. It replaces any and all program agreements previously issued with respect to the loan. You should read this agreement carefully and keep it in Your files.

If You elect Guaranteed Asset Protection, the terms, conditions, and disclosures of the Program are described below. GAP is not insurance coverage. We reserve the right to refuse enrollment in the Program to any Borrower, at Our sole discretion. This agreement will be governed by the laws of Virginia.

## Definitions

**Actual Cash Value** means the amount determined by the primary insurance carrier at the time of the Total Loss or Unrecovered Theft.

**Collection Refinance** means when the terms (including, but not limited to, payment amount) of Your original Loan with Us has been modified or changed due to a loan workout, which results in the termination of the Program for the Loan.

**Date of Loss** means either (i) the date that Your Vehicle was involved in an accident that resulted in the Vehicle being deemed a Total Loss or (ii) the date that Your Vehicle was stolen, which resulted in the Vehicle being deemed an Unrecovered Theft.

**GAP Amount** means the difference between (i) the primary insurance carrier's physical damage insurance payment for a Loss or Unrecovered Theft and (ii) the Unpaid Net Balance of the Installment loan. If You are entitled to collect or receive any payment(s) for Your Vehicle from any other source, including, but not limited to, primary insurance or salvage sale, any and all such payment(s) will be deducted from the GAP Amount. You are permitted to have one or more insurance coverages that will be applied before Your GAP Amount is paid. The GAP Amount shall not exceed $50,000 and is subject to further exclusions and limitations set forth below, including, but not limited to, Late Fees.

**Late Fee** means the fee charged to the Loan for late payment(s).

**Loan** means the financing of the Vehicle, governed by a closed-end note from Us, for the purchase or refinance of the Vehicle with a minimum term of 12 months and a maximum term of 84 months. Loan does not include a Collection Refinance.

**Loan-to-Value** means the ratio of the Loan to the clean retail value of the Vehicle using the NADA Official Used Car Guide.

**Primary Insurance** means in-force insurance coverage, required by Us and carried by You, to protect the Vehicle from collision and comprehensive loss, naming Us as Lien holder.

**Protected Event** includes Total Loss or Unrecovered Theft.

**Total Loss** means a loss where the cost to repair or replace the Vehicle would exceed the Actual Cash Value, as determined by the primary insurance carrier.

**Unpaid Net Balance** means the amount owed by You to pay off the outstanding amount of the installment loan as of the close of business on the date of Loss or Unrecovered Theft.

**Unrecovered Theft** means the Vehicle has been reported as stolen by You to both the police and Your primary insurance carrier, who have made every effort, yet have failed, to find and return the Vehicle.

**Vehicle** means a new, used, or late model used private passenger vehicle built to U.S. specifications, no older than the current year plus seven years of age, that is not used for commercial purposes, which includes four-wheeled autos, vans, pickups, or light trucks not to exceed one-ton load capacity. Commercial purposes include activities such as ride-sharing and food delivery. Motorcycles, recreational vehicles, watercrafts, and vehicles used for taxi, limousine, or "shuttle" service are excluded from the Program.

## General Provisions

**Proof of a Protected Event.** You must notify Us within sixty (60) days of receiving final settlement from the primary or third-party insurance carrier, or Your claim will be time-barred. Documentation that You may be required to provide Us in order to show that conditions of the Program are satisfied include, but are not limited to, the following: (1) a copy of the insurance settlement worksheet(s) and check(s), (2) verification of the insurance deductible, (3) a copy of the police report in the case of an Unrecovered Theft, and (4) Borrower's verification of purchase price, which may include the bill of sale or the purchase order, and (5) signed and initialed Promissory Note.

**Past Events.** The Program does not protect You from events or loss that occurred before Your enrollment in the Program.

**Tax Implications.** You may be subject to federal, state, and local taxes on the amount of a canceled debt. You should consult Your tax advisor. We are not able to provide You with tax guidance.

**Program Fee.** The Program Fee is the amount You pay for protection under the Program. The cost of this Program for new, used, and late model used vehicles is $399, which you may pay in one lump sum or finance as part of your loan. Adding the fee to your loan will increase the cost of the Program.

**Changing the Terms of This Agreement.** We reserve the right to change the terms of this agreement at any time. Should changes be made that are not favorable to You, then You will be notified and provided a reasonable opportunity to cancel enrollment without penalty.

**Termination of the Program.** If you terminate this program within sixty (60) days of enrolling in the program or fail to provide written confirmation of your agreement to the program, we will credit the outstanding balance of Your Loan for any fees charged for the Program. If you terminate this Program, you may re-enroll only one time during the life of the loan.

After sixty (60) days of enrollment, the fee is fully earned, non-refundable, and GAP will not be canceled. In the event of a Loss or Unrecovered Theft of

the Vehicle, the enrollment fee will be deemed as fully earned, and therefore, no refund will be due. Your protection under the Program will automatically terminate and no benefits will be paid for any Protected Event:

• if Your Loan account is closed for any reason, including, but not limited to, being paid in full or being charged off as a loss;

• if You fail to pay the initial Program Fee, or You default on the terms of the Promissory Note, Security Agreement, and Disclosure;

• if You refinance Your underlying Installment Loan with Us or another financial institution, so that Your Loan account is paid in full and there is no Loan amount to deduct;

• if you have a Collection Refinance of Your Loan through Us as there is no GAP product offered for such Loans;

• if you default on the terms of this agreement, such as by using the vehicle for commercial purpose; or

• for any other reason by giving You notice at least 30 days in advance of the termination (or as required by law).

**Errors and Adjustments.** If We have inadvertently deviated from the terms of this agreement, We will adjust the balance when the error is discovered. If We issued protection under the Program due to Our own error, and We recognize Our error before a Protected Event occurs, Our obligation to You is limited to return of any Program fee You paid.

If We recognize Our error after a Protected Event occurs, We will provide benefits for the Protected Event that occurred. However, if You misstated a material fact when enrolling for the Program that caused Us to issue protection under the Program when We otherwise would not have, We will return any Program fee upon discovery, and We will not provide any benefits even if an otherwise Protected Event has already occurred.

Case ID: 23090006
Control No.: 230972

Borrower nor Navy Federal may commence, join, or be joined to any
action (as either an individual litigant or the member of a class) that
rom the other party's actions pursuant to this Agreement or that alleges
other party has breached any provision of, or any duty owed by reason
Agreement, until such party has notified the other party of such alleged
and afforded the other party a reasonable period after the giving of
lice to take corrective action.

## ...ples

...is protected according to the terms of this agreement if You are
...l for the specified Program protection, You have paid the applicable
...n fee, and You remain current with Your Loan payments. If You
...nce a Total Loss or an Unrecovered Theft, Navy Federal may cancel
... Amount of the Loan up to a maximum benefit of $50,000 subject to the

...le 1: Your car is involved in an accident and is considered a Total Loss
... Insurance company. Your insurance company calculates the Actual
...alue of Your car at $10,000 and provides You an insurance payment
...amount. Your Unpaid Net Balance at the Date of Loss is $13,000.
...ve a past-due payment on your loan in the amount of $550.00. GAP
... the $2,450.00 and the past due payment of $550.00 will be Your
...ibility.

...lowing shows this example:
...l Cash Value (ACV) of Vehicle = $10,000
...d Net Balance at Time of Loss = $13,000
...payment from your insurance carrier = $10,000
...anding Balance after insurance payment = $3,000
...due payment amount = $550.00
...amount = $2,450.00
...overed/Your responsibility = $550.00

## ...sion and Limitations

...eement does not apply when the Total Loss or Unrecovered Theft is:
...lting directly or indirectly from forgery or any dishonest, fraudulent, or
...act by You, Your agent, or authorized user; (2) caused intentionally by
...ur agent, or authorized user; or (3) for a Vehicle that is part of a fleet
...ntended for use as a public or livery conveyance.

...ximum term for Guaranteed Asset Protection will not exceed 84
... and the GAP amount canceled shall not exceed $50,000 in total.
... Insurance must be maintained on the vehicle. Auto Loans in the
...of $7,500.00 or less with a term of 12 months or less are not eligible
... If the Loan to Value ratio of your vehicle is less than 70%, your Loan
...e eligible for the Program. Enrollment is subject to Our verification
...loan and vehicle meet these eligibility requirements. The GAP Amount
... include:

...fundable additions to amount financed;

...e charges, fees (except that fee paid on Payment Protection Plan, if
...able), funds, or interest accrued or added after the date of Total Loss;

## ...urrent Protected Benefits

...ected Event occurs and also results in a payment under a Payment
...on Plan (for example, a protection in the event of death), then the
...t Protection Plan payment will be made first and applied to the Unpaid
... before the Program is effective. The protection afforded under the

## ...s of the Loan After a Protected Event

...he time it takes to process Your claim, You remain responsible for
...at least the minimum payment due on the Loan by the regular payment
...e. You are responsible for any difference between the minimum

## ...ct Us With Any Questions About the Program

...t the following for information about the Program.
...ent in or cancellation of the Program: 1-888-842-6328
...te a claim for a protected event: 1-866-258-7298, Option 1
...n status or questions regarding a claim: 1-866-258-7298, Option 2

# EXHIBIT E
# TRIAL TRANSCRIPT EXCERPT
# AUGUST 12, 2024

# First Judicial District of Pennsylvania

*230900635*
*Idris Abdus Saber V. Navy Federal Credit Union*

---

*Motion Volume 1*
*August 12, 2024*



**Court Reporting System**

---

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File aber.txt, 14 Pages*
*CRS Catalog ID: 24100405*



Page 1

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION
- - -

[1]
[2]

[3]
IDRIS ABDUS SABER              :
[4]      Plaintiff      :
                              :
[5]   vs.                     :
                              :
[6] NAVY FEDERAL CREDIT UNION  :
      Defendant      : NO. 230900635
[7]              - - -
[8]
[9]        August 12, 2024
         Courtroom 446-City Hall
         Philadelphia, Pennsylvania
[10]
                - - -
[11]
BEFORE: THE HONORABLE ANNE MARIE B. COYLE, J.
[12]              - - -
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 2

[1] **APPEARANCES:**
[2]
[3]      SEAN CRAIG, ESQUIRE
         Attorney for Defendant
[4]
[5]
[6]      IDRIS ABDUS SABER, PRO SE
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 3

[1]           INDEX
[2]
WITNESS           DR  CR  RDR  RCR
[3]
  (No witnesses.)
[4]
[5]
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 4

[1]    **COURT CRIER:** All rise.
[2]         - - -
[3]    (Court is opened and called to order.)
[4]         - - -
[5]    **THE COURT:** Case No. 230900635, Idris
[6] Abdus Saber v. Navy Federal Credit Union.
[7]    Please approach.
[8]         - - -
[9]    (Parties approach and stand at bar of
[10] court.)
[11]         - - -
[12]    **THE COURT:** Please identify yourselves
[13] for the record.
[14]    **MR. SABER:** Idris Abdus Saber,
[15] I-d-r-i-s A-b-d-u-s S-a-b-e-r, third-party
[16] intervener for the plaintiff.
[17]    **THE COURT:** You're actually the
[18] plaintiff.
[19]    Go ahead.
[20]    **MR. CRAIG:** Sean Craig, on behalf of
[21] Navy Federal.
[22]    **THE COURT:** Mr. Saber, please raise
[23] your right hand.
[24]         - - -
[25]    IDRIS ABDUS SABER, having been

Page 5

[1] duly sworn, was examined and testified as follows:

[2]              - - -

[3]         THE COURT: Mr. Saber, we are here to

[4] address both your motion for post-trial relief

[5] as well as your motion seeking to file nunc pro

[6] tunc relief in some form or fashion.

[7]         I will hear you.

[8]         MR. SABER: Thank you, Your Honor.

[9] The nunc pro tunc and the post-trial relief was

[10] based on the appeal process in which it was the

[11] opinion was not entered into the record.

[12]         THE COURT: I'm sorry. What?

[13]         MR. SABER: The opinion of the judge

[14] was not entered into the record.

[15]         THE COURT: What occurred there is

[16] that the Court sent over a notice because the

[17] Court never received your 1925 statement of

[18] alleged errors, in accordance with this Court's

[19] order. However -- let me finish.

[20]         MR. SABER: I'm sorry. Yes, ma'am.

[21]         THE COURT: However, after the Court

[22] sent up the opinion that reflected the request

[23] for dismissal for failure to file the 1925

[24] statement of errors, it was brought to this

[25] Court's attention, upon further research, that

Page 6

[1] indeed you did file it, albeit, for whatever

[2] reason, it was not uploaded properly. So once

[3] this Court realized that you did file it, this

[4] Court wanted to make sure that you had the

[5] opportunity to proceed and notify the appellate

[6] court that it was filed.

[7]         Notably, we did not receive a copy,

[8] which is what we were supposed to do. But

[9] okay. The appellate court will expect a

[10] response from this Court with respect to that

[11] position, and indeed, the appellate court, I

[12] think it was noticed that the order of the

[13] Court was not docketed properly either.

[14]         So to remedy all of that, this Court

[15] will notify the appellate court that your 1925

[16] statement should be accepted, and that the

[17] opinion of the appellate court will be

[18] forwarded. That will include the response with

[19] respect to all of that.

[20]         Now, you also filed a post-trial

[21] motion, seeking to correct whatever errors you

[22] believe existed with respect to the

[23] October 2nd, 2023 order.

[24]         So go ahead.

[25]         MR. SABER: Finish your thought.

Page 7

[1]         THE COURT: I'm done. Go ahead.

[2]         Just to clarify, to some extent I

[3] agree with you on the other, but I need to hear

[4] what you think the Court did wrong with respect

[5] to the October 2nd orders.

[6]         MR. SABER: Okay. The question then

[7] and now is whether the promissory note reflects

[8] petitioner and owner and holder of the note.

[9] In looking at the promissory note, there is a

[10] stamped endorsement placed at the bottom of the

[11] note that has the signature of the petitioner,

[12] "Without recourse, Paid to the Order of."

[13]         With that endorsement and the

[14] endorser's signature on that stamp, the

[15] petitioner incurs liability of the note, which

[16] removes the defendant from being the holder and

[17] owner of the note.

[18]         THE COURT: I'm not understanding your

[19] logic. Because as you did in this case, in

[20] order to procure or purchase the motor vehicle

[21] at issue, you obtained a loan, and you used the

[22] monies from that loan from the Navy Federal

[23] Credit Union to purchase the vehicle. A

[24] condition of the loan that you received is that

[25] you pay it back. You don't receive title to

Page 8

[1] the vehicle until and unless you pay the loan

[2] back in the recited fashion pursuant to the

[3] terms of the loan.

[4]         I am truly not understanding what your

[5] difficulty is with that. You seem to insist

[6] that you are entitled to the title of the car

[7] without paying the loan back.

[8]         MR. SABER: No, ma'am.

[9]         THE COURT: So explain. Could you

[10] explain where you're coming from with this?

[11] Because I'm at a loss to understand what you're

[12] saying.

[13]         MR. SABER: Okay. What you stated is

[14] what the security instrument, the promissory

[15] note, states. It has the borrower's signature

[16] on the borrower's line. At the bottom of this

[17] promissory note, there is an endorsement signed

[18] by the endorser, "Without recourse, Paid to the

[19] Order of," which transfers liability of the

[20] security instrument to the new payee. Just

[21] like a bank would stamp and endorse a mortgage

[22] or the promissory note of a mortgage, it

[23] transfers liability from one bank to another.

[24] This special stamp does the same thing.

[25]         THE COURT: Your underlying motion,

Page 9

[1]   Mr. Saber, recited the belief, a mistaken one
[2]   at that, that you are entitled to the title of
[3]   the vehicle that you purchased utilizing the
[4]   loan amount after procuring that amount of
[5]   money from the bank. You're not entitled to
[6]   title until and unless you pay the loan back.
[7]   So honestly, I'm failing to understand your
[8]   point.
[9]        MR. SABER:  You can't excuse the
[10]  endorsement and what the endorsement means on a
[11]  security instrument. And that's what you're
[12]  doing.
[13]       THE COURT:  Thank you.  Counsel?
[14]       MR. CRAIG:  Good morning, Your Honor.
[15]  If I may address the motion nunc pro tunc.  I
[16]  believe that to be moot at this point given the
[17]  fact the superior court quashed Mr. Saber's
[18]  appeal, so --
[19]       THE COURT REPORTER:  Excuse me.  You
[20]  will have to slow down.  I can't understand
[21]  what you're saying.
[22]       MR. CRAIG:  I think the issue with
[23]  whether or not the 1925 statement was ever
[24]  received at this point is moot, given the fact
[25]  the superior court quashed the appeal and sent

Page 10

[1]   it back to this Court to hear a motion for
[2]   post-trial relief.  I don't think -- the
[3]   superior court, as I understand, does not
[4]   retain jurisdiction so there is nothing to send
[5]   back to them at this point.  They have quashed
[6]   it.
[7]        THE COURT:  I think he was asking to
[8]   reinstate his appeal.  Because I think they
[9]   quashed it possibly because of the lack of
[10]  docket of the 1925 --
[11]       MR. CRAIG:  No.  He filed the motion
[12]  nunc pro tunc after Your Honor filed the
[13]  statement in lieu of a 1925 opinion.
[14]       THE COURT:  Right.
[15]       MR. CRAIG:  Following that briefing
[16]  continued, he filed his appellate brief, we
[17]  filed our response.  The superior court quashed
[18]  because they held that the October 2nd hearing,
[19]  because Your Honor heard evidence, should have
[20]  been a trial and should have been the
[21]  equivalent of a trial and Mr. Saber should have
[22]  had ten days to file post-trial motion.
[23]       THE COURT:  Oh, right.  I forgot that.
[24]  You're right.  It's been so long.  I forgot.
[25]  Sorry about that.  You're right.

Page 11

[1]        MR. CRAIG:  I think the motion nunc
[2]   pro tunc at this point is moot and can be
[3]   denied as moot.  The only thing here to address
[4]   is the post-trial motion which Mr. Saber was
[5]   just speaking to.
[6]        THE COURT:  Which would enable Mr.
[7]   Saber to file a new appeal.
[8]        MR. CRAIG:  That's correct.  We would
[9]   be starting over with a new appellate process.
[10]       THE COURT:  Do you understand that,
[11]  Mr. Saber?
[12]       MR. SABER:  Yes.
[13]       THE COURT:  You're both right on that.
[14]  So could you address the post-trial motion,
[15]  then?
[16]       MR. CRAIG:  Absolutely.  There is no
[17]  issue here to grant relief to Mr. Saber.  Mr.
[18]  Saber misunderstands what an endorser is under
[19]  the Pennsylvania UCC.  An endorser is not a
[20]  person who makes a promissory note.  Mr. Saber
[21]  agreed to pay Navy Federal when it loaned him
[22]  the money.  He is the maker of the promissory
[23]  not, the endorser.
[24]       The endorser, under the UCC, is
[25]  someone who later comes into a negotiable

Page 12

[1]   instrument.  And signing it "without recourse"
[2]   means they would not be liable if the original
[3]   maker of a note fails to pay.
[4]        So here Mr. Saber is the original
[5]   maker and not an endorser.  And in fact, the
[6]   Pennsylvania Supreme Court addressed a
[7]   situation just like this where it says the
[8]   words "without recourse" have no meaning in a
[9]   context like this as between the original
[10]  parties to a negotiable instrument.  So Mr.
[11]  Saber's stamping "without recourse" on the
[12]  promissory note has literally no legal effect.
[13]       And I have a copy of that case, if you
[14]  would like that.
[15]       THE COURT:  Please.
[16]       MR. SABER:  That case does not state
[17]  that.
[18]       THE COURT:  Mr. Saber, do you
[19]  understand what he said?
[20]       MR. SABER:  I understand exactly.
[21]       THE COURT:  Do you agree with it?
[22]       MR. SABER:  No, because the UCC
[23]  doesn't permit that.
[24]       THE COURT:  Okay.  Is there anything
[25]  else anybody wants to tell me?

Page 13

[1]      MR. CRAIG:  I don't believe so, Your
[2]  Honor.  My position is that Mr. Saber has taken
[3]  out a loan that he hasn't repaid.  He is not
[4]  entitled to the title of the vehicle and the
[5]  UCC and case law supports that position.
[6]      MR. SABER:  I say the UCC supports my
[7]  standing, that an endorsement is an
[8]  endorsement.  It removes the endorser from
[9]  liability.
[10]      THE COURT:  If I follow your logic,
[11]  Mr. Saber, you could go in, use funds belonging
[12]  to another, promise to pay it back, take the
[13]  benefit of that, purchase the vehicle, don't
[14]  pay it back, and you think you're entitled to
[15]  the title free and clear.
[16]      Do I understand that correctly?
[17]      MR. SABER:  No.
[18]      THE COURT:  What is it you're seeking?
[19]  What is the relief you're seeking?
[20]      MR. SABER:  I'm seeking the title of
[21]  the vehicle.
[22]      THE COURT:  You can't get the title of
[23]  the vehicle as long as there's a lien on it.
[24]  When you pay the loan back, you can get the
[25]  title of the car.

Page 14

[1]      MR. SABER:  Based on the endorsement
[2]  on the promissory note.
[3]      THE COURT:  I can see we are getting
[4]  nowhere with all of that.
[5]      The post-trial motion is denied.  The
[6]  motion for nunc pro tunc relief is moot, since
[7]  the superior court quashed the appeal.  So
[8]  according to the superior court, once we take
[9]  care of the post-trial motion, then you would
[10]  have the ability to file an appeal within the
[11]  time period as prescribed by law.
[12]      Thank you.
[13]      - - -
[14]      (Matter is concluded.)
[15]      - - -
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 15

[1]      C E R T I F I C A T E   O F   O F F I C E R.
[2]
[3]      I, Virginia Leyendecker, a Certified
[4]  Shorthand Reporter and Notary Public, do hereby
[5]  certify that the foregoing is a true and accurate
[6]  transcript of the proceedings as taken
[7]  stenographically by and before me at the date, time
[8]  and location aforementioned.
[9]      I do further certify that I am neither
[10]  a relative nor employee, nor attorney or counsel to
[11]  any parties involved; that I am neither related to
[12]  nor employed by any such attorney or counsel, and
[13]  that I am not financially interested in the action.
[14]
[15]
[16]
[17]      /s/Virginia Leyendecker, CSR RPR
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Court Reporting System (Generated 2024/10/31 12:21:49)

Virginia Leyendecker, O.C.R      Court Reporting System      (page 13 - 1!

Lawyer's Notes